**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KEVIN TINKELMAN, Plaintiff** | : | **No. 3:25cv632** |
| | : | **(Judge Munley)** |
| **v.** | : | FILED SCRANTON AUG 31 2026 PER ___ DEPUTY CLERK |
| **LIBERTY MUTUAL INSURANCE COMPANY, Defendant** | : | |

## MEMORANDUM

This matter arises from a coverage dispute between Plaintiff Kevin Tinkelman and Defendant Safeco Insurance Company of Illinois ("Safeco"), which, per the defendant, has been improperly designated as Liberty Mutual Insurance Company in this matter. Plaintiff filed an insurance claim with Safeco after his basement flooded. Within four days of the claim, Safeco issued a denial letter citing a water damage exclusion. This civil action followed with the plaintiff advancing claims for breach of contract and statutory bad faith, as authorized by 42 Pa. Cons. Stat. § 8371.[1]

[1] On April 8, 2024, Safeco removed this case from the Lackawanna County Court of Common Pleas. (Doc. 1, Notice of Removal). Tinkelman is a citizen of Pennsylvania, and Safeco is a citizen of Illinois and Massachusetts by virtue of being organized under the laws of Illinois and maintaining its principal place of business in Massachusetts. Id. ¶¶ 5–6. Plaintiff claims a loss of $102,000 in this case, (Doc. 1-2, Compl. ¶ 16), and asserts that the defendant violated a Pennsylvania statute which permits the recovery of punitive damages and attorneys' fees, 42 Pa. Cons. Stat. § 8371. Id. at 9–10. Consequently, the court has subject matter jurisdiction pursuant to the diversity statute, because the matter in controversy exceeds $75,000 and is

Before the court is Safeco's motion for summary judgment, which primarily relies upon the same exclusion. For the reasons set forth below, the undisputed facts surrounding the loss place Tinkelman's claim within the applicable water damage exclusion to the policy. Therefore, the motion for summary judgment will be granted.

**Background**

Safeco issued to plaintiff a homeowners policy, No. OK6496285, which insured plaintiff's property at 1266 Lake Road, Lake Winola, Pennsylvania. (Doc. 11, SOF, ¶ 1).[2] On or about August 9, 2024, the property sustained damage when water entered the basement. Id. ¶ 4.

This case requires an extended discussion about the sump pumps in Tinkelman's basement. The policy does not cover building property losses "caused directly or indirectly by any . . . excluded perils." (Doc. 11-2 at ECF p. 12). One of those excluded perils is "water damage," which the policy defines, in part, as "water which escapes or overflows or discharges, for any reason, from

between citizens of different states. 28 U.S.C. § 1332(a)(1). As a federal court sitting in diversity jurisdiction, the court applies state substantive law and federal procedural law. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)). The substantive law of Pennsylvania thus applies in this case.

[2] Unless indicated otherwise, the court cites to the defendant's statement of material facts ("SOF"), (Doc. 11), which the plaintiff admitted in his response to the statement of facts ("RSOF"), (Doc. 17). All facts from the record are construed in a light most favorable to plaintiff as the nonmoving party. See Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 187 (3d Cir. 2015) (citation omitted).

within a sump pump, sump pump well or any other system designed to remove water which is drained from the foundation area." Id. at 14. Per the policy, water damage losses are excluded "regardless of any other cause or event contributing concurrently or in any sequence to the loss[,]" and "apply whether or not the loss event results in widespread damage or affects a substantial area." Id. at 12.

According to Tinkelman, he has owned the Lake Winola property for over a decade. (Doc. 11-4, Pl. Dep., 9:16–10:18). Upon purchasing the property, plaintiff leveled the original house and proceeded with new, custom construction. Id., 22:12-19. In the process of building the home, plaintiff requested that the contractor install two sump pumps in the home's basement. Id. 22:2–23:3. As explained during the depositions of the plaintiff and his home contractor, Sergio Semedo, if water accumulated to a specified level in the sump well, the connected sump pumps would discharge the excess water into a drain line across the front of the property and then into a storm drain. Id., 24:10-22, 30:18–31:3; Doc. 11-5, S. Semedo Dep., 19:20–21:18. Plaintiff installed "those two redundant sump pumps specifically so that [he] wouldn't get water." (Doc. 11-4, 22:3–23:3).

Semedo testified that he was familiar with the sump pump system from his previous work at Tinkelman's lake house. (Doc. 11-5, 9:12–10:16). Before the incident giving rise to this action, plaintiff asked Semedo to swap the sump

pumps "to alleviate the primary pump and give it a rest" because the primary pump was doing most of the work. Id., 15:22–16:11. After swapping the sump pumps, Semedo tested the system by filling a portion of the sump basin with water from a garden hose. Id., 16:12-24. According to Semedo, this test was to make sure that both pumps came on and were functioning. Id. Per plaintiff's contractor, the sump pumps were working. Id., 19:20–20:22.

As Tinkelman explained, it had been raining on the date of the loss.[3] (Doc. 11-4, 16:19–17:15. A water detection sensor activated and alerted the plaintiff on his cell phone. Id., 13:1-6. Upon arrival at his lake house, plaintiff observed approximately four-and-a-half feet of water in the basement. Id., 13:7-10. Plaintiff called the local volunteer fire department to perform a pump out. Id., 16:5-18, 21:11-20. At some point thereafter, water began to build up again and he called a contracting company called Rossi Rooter to dispel an additional 3,000 gallons of water. Id., 27:13–28:16. Prior to this incident, plaintiff never observed water collecting in his basement — "[n]ot a drop." Id., 24:23–25:4.

As to the cause of the flooded basement, Tinkelman explained that Rossi Rooter used a camera to search the drainpipe leading out from the sump pumps.

[3] The parties dispute whether the loss was caused by the remnants of Tropical Storm Debby. (Compare Doc. 11 ¶ 4 with Doc. 17 ¶ 4).

Id., 28:17–29:7. According to plaintiff, Rossi Rooter found a blockage in the pipe. Id. Plaintiff then hired Semedo to remedy the situation. Id., 29:23-30:16.

As Semedo testified, he discovered that a portion of the underground drainpipe connected to the sump pump had become compressed into an oblong shape approximately 40 to 50 feet away from the home. (Doc. 11-5, 19:20–20:22, 29:4-22). Semedo concluded that this deformation restricted the flow of water that could pass through from the sump pump to the storm drain. Id. While the drainpipe originally had a two-inch diameter, Semedo estimated that the pipe was compressed to only an inch in diameter. Id., 37:4–38:10.

As a result of his basement flooding, Tinkelman alleges that he sustained damages in the amount of $102,000. (Doc. 1-2, Compl. ¶¶ 15–16). He filed a claim with Safeco to recoup those losses. On August 13, 2024, four days after the incident, defendant denied plaintiff's claim. (Doc. 11-6).

Safeco's denial letter referenced the water damage exclusion mentioned above. Id. at ECF p.2.

In explaining the coverage decision, Safeco indicated:

> The policy provides coverage for damage caused by accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning, or automatic fire protective sprinkler system, or from within a household appliance. A sump, sump pump, or related equipment is not considered a part of the plumbing system. Because the damage was caused by the sump pump backup of storm water, you have no coverage for the claim.

Id.

Tinkelman contends that Safeco's refusal to provide coverage is a breach of the insurance policy and a violation of Pennsylvania's bad faith statute. Following a period of discovery, the defendant moved for summary judgment, relying on subsections of the water damage exclusion.

**Legal Standard**

Summary judgment is proper "when there is no genuine issue of material fact in the case and the moving party is entitled to judgment as a matter of law." Reedy v. Evanson, 615 F.3d 197, 210 (3d Cir. 2010) (citation omitted); see also FED. R. CIV. P. 56(a). "A fact is material if its resolution 'might affect the outcome of the suit under the governing law,'. . . [a]nd a dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Mall Chevrolet, Inc. v. Gen. Motors LLC, 99 F.4th 622, 631 (3d Cir. 2024) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

At this stage, the judge's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. All "facts in dispute," Daniels, 776 F.3d at 187, and all "inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (cleaned

up). "[W]hen there is a disagreement about the facts or the proper inferences to be drawn from them, a trial is required to resolve the conflicting versions of the parties." Peterson v. Lehigh Valley Dist. Council, United Bhd. of Carpenters & Joiners, 676 F.2d 81, 84 (3d Cir. 1982). Furthermore, "a court's role remains circumscribed in that it is inappropriate for a court to resolve factual disputes and to make credibility determinations." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) (citation omitted). "[W]here the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Id. (citations omitted).

**Analysis**

After review of the policy, the parties' arguments, and the record, summary judgment is appropriate in favor of the defendant on the plaintiff's breach of contract and bad faith claims.

**1. Breach of Contract Claim**

An insurance policy, "is nothing more than a contract between an insurer and an insured." Gallagher v. GEICO Indem. Co., 201 A.3d 131,137 (Pa. 2019) (citation omitted). A plaintiff asserting a breach of contract claim under Pennsylvania law must establish: 1) the existence of a contract, including its essential terms; 2) a breach of the contract; and 3) resultant damages. Meyer,

Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C., 137 A.3d 1247, 1258 (Pa. 2016).

Focusing on evidence of a breach, Pennsylvania recognizes certain general rules applicable to the construction of insurance policies. Erie Ins. Exch. v. Transamerica Ins. Co., 533 A.2d 1363, 1366 (Pa. 1987). Like any other contract, an insurance contract "requires that the intention of the parties be determined from the words of the instrument." Mohn v. Am. Cas. Co. of Reading, 326 A.2d 346, 351 (Pa. 1974). That is, the court must apply "traditional principles of contract interpretation in ascertaining the meaning of the terms used therein." Kurach v. Truck Ins. Exch., 235 A.3d 1106, 1116 (Pa. 2020) (citing Gallagher, 201 A.3d at 137).

If the policy terms are clear and unambiguous, courts must "give those terms their plain and ordinary meaning, unless they violate a clearly established public policy." Id. (citation omitted). If policy terms are ambiguous, i.e., "subject to more than one reasonable interpretation when applied to a particular set of facts," the provisions of the policy must be construed "in favor of the policyholder and against the insurer, as the insurer drafted the policy and selected the language which was used therein" Id. (citation modified). Additionally, "a court must not 'distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity[.]'" Mitsock v. Erie Ins. Exch., 909 A.2d 828, 831

(Pa. Super. Ct. 2006) (quoting Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999)).

In this case, Safeco moves for summary judgment based on a water damage exclusion under the policy. This is an assertion of an affirmative defense under Pennsylvania law, and the burden is placed upon the insurer to establish it. Erie Ins. Exch., 533 A.2d at 1366 (citations omitted).

The assertion of an affirmative defense impacts the summary judgment calculus.[4] "Where the party moving for summary judgment is . . . the party who bears the burden of proof at trial, the standard is more stringent." Nat'l State Bank v. Fed. Rsrv. Bank of N.Y., 979 F.2d 1579, 1582 (3d Cir. 1992). Thus, the defendant must support the motion for summary judgment with evidence that would entitle it to a directed verdict if not controverted by the plaintiff at trial. In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (citations omitted). "Once a moving party with the burden of proof makes such an affirmative showing, it is entitled to summary judgment unless the non-moving party comes forward with probative evidence that would demonstrate the existence of a triable issue of fact." Id. at 238 (citing FED. R. CIV. P. 56(e) (additional citation omitted)).

---

[4] In its answer to Tinkelman's complaint, Safeco raises the water damage exclusion language from the policy as one of its affirmative defenses. (Doc. 4 at 6–7, Second Affirmative Defense).

Safeco relies on three provisions in the insurance policy to support judgment in its favor on plaintiff's breach of contract claim: 1) the policy's concurrent causation clause preceding the listed exclusions; 2) paragraph 10(b), the water damage exclusion subsection for groundwater; and 3) paragraph 10(e), the water damage exclusion subsection for sump pump, sump wells, and sump pump systems.

Those relevant policy provisions are as follows:

> **BUILDING PROPERTY LOSSES WE COVER**
>
> We cover accidental direct physical loss to property described in **Building Property We Cover** except as limited or excluded.
>
> ---
>
> **BUILDING PROPERTY LOSSES WE DO NOT COVER**
>
> We do not cover loss caused directly or indirectly by any of the following excluded perils. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area;
>
> . . .
>
> **10. Water Damage,** meaning:
>
> . . .
>
> **b.** water below the surface of the ground, including that which exerts pressure on, or seeps or leaks through a building, wall, bulkhead, sidewalk, driveway, foundation,

> swimming pool, hot tub or spa, including their filtration and circulation systems, or other structure;
>
> . . .
>
> **e.** water which escapes or overflows or discharges, for any reason, from within a sump pump, sump pump well or any other system designed to remove water which is drained from the foundation area.

(Doc. 11-2 at ECF pp. 12, 14).

The above provisions are not ambiguous. The policy plainly excludes coverage for "water damage," which has several particular meanings under the policy terms. Under paragraph 10(b), "water damage" means "water below the surface of the ground," which includes certain examples such as water that "seeps or leaks through a . . . foundation . . . or other structure[.]" Id. at 14. Under paragraph 10(e), "water damage" means "water which escapes or overflows or discharges, for any reason . . . from within . . . a sump pump well or any other system designed to remove water which is drained from the foundation area[.]" Id.

Reading these exclusions together, Safeco relies upon Sergio Semedo's testimony after he remediated issues at Tinkelman's lake house. Specifically, Semedo testified:

> Of course, Mr. Tinkelman was very worried about it happening again. So I was there after Rossi Rooter tried to snake the pipe to see as far as where -- if there was a blockage or where the issue was.
>
> That's when Mr. Tinkelman decided for us to pretty much redo the whole sump pump system because I told him, unfortunately what I think what happened -- at the time it was what I thought happened, and then I found out once I got over there with a machine was his extraction pipe had actually collapsed outside the home probably 40 or 50 foot away from the house.
>
> And I said, the sump pumps were working. The problem is the pipe that led water to -- closer to the road, is -- I mean, if it was collapsed, it was just very limited flow, and it couldn't keep up with the amount of water that was coming in from the storm.

(Doc. 11-5, 20:4-22).

Semedo also testified as follows:

> Q. Okay. When you say water coming in, you mean water coming up underneath the foundation through the sump pit?
>
> A. Yeah, I'm assuming it was groundwater that was coming in, and the sump pumps were trying to extract it. But it wasn't enough to keep up with the amount of water that was coming in because of the storm.

Id., at 20:23–21:5.

Tinkelman himself testified that "[t]he sump pumps were still operating. There was water coming, you know, back out from the sump pumps, so they

weren't able to go through like they've been doing for the last 10, 12 years." (Doc. 11-4, 27:2-7).

With such evidence, Safeco has made its factual showing in asserting a policy exclusion affirmative defense at the summary judgment stage. To move forward to trial on this claim, the plaintiff must demonstrate a triable issue of fact. He cannot.

From the above testimony, Tinkelman takes the position that the water damage occurred due to a crushed pipe, not an issue with the sump pumps themselves. (Doc. 16 at ECF pp. 21–22). Even construing the facts in that manner, however, such facts place the plaintiff within the language of the exclusion in paragraph 10(e).

According to the uncontroverted evidence, the plaintiff had a system in his basement with two sump pumps and a single drainpipe. That system failed when the drainpipe collapsed and could not sufficiently disperse the water that came in from the ground during a period of rain. As indicated above, under paragraph 10(e) of the policy, "water damage" means "water which escapes or overflows or discharges, for any reason . . . from within . . . any other system designed to remove water which is drained from the foundation area[.]" That "other system" also included sump pumps and a sump pump well. Therefore, as plaintiff's own testimony indicates, water escaped, overflowed, and discharged from a sump

pump system and caused damage to his basement. Such a loss is excluded from coverage by the plain meaning of the policy terms.

In his final paragraph of argument on the issue, Tinkelman asserts that his situation falls under an exception to a different water damage exclusion in paragraph 10(d). (Doc. 16 at ECF p. 24). This abbreviated argument fares no better.

Under paragraph 10(d), "water damage" means "water which escapes or overflows from drains or related plumbing appliances on the *residence premises*." (Doc. 11-2 at ECF p. 14) (italics in original). "However, this exclusion does not apply to overflow and escape caused by malfunction on the *residence premises*, or obstruction on the residence premises, of a drain or plumbing appliance on the *residence premises*[.]" Id.

Regardless of such verbiage, drainpipes are different than drains and the drainpipe in this case was connected to a sump pump well and a sump pump. Water damage from water escaping a sump pump well is excluded by paragraph 10(e).

With respect to Tinkelman's paragraph 10(d) argument, Safeco also has the concurrent causation language of the policy on its side. Specifically, the policy provides: "We do not cover loss caused directly or indirectly by any of the following excluded perils. Such loss is excluded regardless of any other cause or

event contributing concurrently or in any sequence to the loss." (Doc. 11-2 at ECF p. 12).

As discussed above, the policy does not cover "water damage" in the form of "water below the surface of the ground" in paragraph 10(b) or in the form of "water which escapes from a sump pump" in paragraph 10(e). If Tinkelman possessed facts which placed his loss within the exception to the exclusion in paragraph 10(d), which he does not, his property damage would still have been caused "directly or indirectly by" circumstances within the other water damage exclusions in paragraphs 10(b) and 10(e).

In T.H.E. Insurance Company v. Charles Boyer Childrens Trust, the Third Circuit analyzed a similar dispute with a water damage exclusion and an extensive concurrent causation clause. 269 F. App'x 220, 222 (3d Cir. 2008). The concurrent causation clause in that policy stated: "[w]e will not pay for loss or damage caused directly or indirectly by any of the following [enumerated exclusions]. Such loss or damage is excluded regardless or any other cause or event that contributes concurrently or in any sequence to the loss." Id. Upon review, the court found the lead-in clause "expansive" and, when read with a specific exclusion, enough to overcome any benefit to the insured as afforded by an all-risk policy. Id. at 222–23.

The Third Circuit distinguished this result from Spece v. Erie Insurance Group, 850 A.2d 679, 683 (Pa. Super. Ct. 2004), a case relied upon in Tinkelman's brief in opposition to defendant's motion for summary judgment. (Doc. 16 at 23). In Spece, a lightning strike caused a power outage that interrupted the home's sump pump system and caused water damage. 850 A.2d at 681. The relevant policy excluded "water which enters into and overflows from within a sump pump, [or] sump pump well[.]" Id. at 683. Given the Spece court's inability to reconcile the exclusion with coverage for a lightning strike, the court found that ambiguous policy terms and an uncertain cause of damage allowed the policy to be construed against the insurer and for the insured. Id. at 684.

This case, however, does not include a lightning strike leading to a flooded basement. If it did, Safeco's policy would exclude that too. (Doc. 11-2 at ECF p. 14 ("This exclusion applies whether the water damage is caused by or resulting from human or animal forces or any act of nature.")).

Accordingly, summary judgment will be granted on plaintiff's breach of contract claim.[5]

[5] Tinkelman also mentions, but does not explore, the contractual defense of unconscionability in his brief in opposition. (Doc. 16 at 22). Issues raised in a passing manner in a brief without developed arguments are deemed waived. Gladysiewski v. Allegheny Energy Serv. Corp., 282 F. App'x 979, 981 (3d Cir. 2008).

**2. Bad Faith Claim**

Additionally, defendant moves for summary judgment on plaintiff's statutory bad faith claim. To prevail in a bad faith insurance claim pursuant to 42 PA. CONS. STAT. § 8371, a plaintiff must demonstrate, by clear and convincing evidence that: (1) the insurer did not have a reasonable basis for denying benefits under the policy; and (2) the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim. Rancosky v. Washington Nat'l Ins. Co., 170 A.3d 364, 377 (Pa. 2017). Accordingly, if an insurer properly concludes "that there was no potential coverage under the policy," a bad-faith claim will necessarily fail. USX Corp. v. Liberty Mut. Ins. Co., 444 F.3d 192, 202 (3d Cir. 2006). Here, because the court has determined that summary judgment is warranted on the breach of contract claim, summary judgment is also warranted on the bad faith claim.

**Conclusion**

For the reasons set forth above, Safeco's motion for summary judgment will be granted. An appropriate order follows.

**Date:** 8/31/26

**JUDGE JULIA K. MUNLEY**
**United States District Court**